## HARRELL v. CLARKE et al.

### No. 22512. Nov. 19, 1935.

J. B. Dudley, for plaintiff in error.

Abernathy & Howell, for defendants in error.

PER CURIAM. This is an action brought by Hulbert S. Clarke against G. C. Harrell and the Liberty National Bank for the specific performance of a contract of sale of oil, gas, and mineral rights and to enforce an escrow agreement.

The contract sought to be enforced reads as follows:

"Contract and Agreement.

"This contract and agreement made and entered into on this 23rd day of October, 1929, by and between Hulbert S. Clarke, party of the first part, and G. C. Harrell, party of the second part, witnesseth:

"That for and in consideration of the sum of twenty-four hundred dollars ($2,400) to be paid as hereinafter provided, the party of the first part contracts and agrees to transfer, convey, and deliver unto the party of the second part a mineral deed covering a three acre royalty interest in the oil and gas in and under the following described real estate, to wit:

"The east half (E. ½) of the northwest quarter (N. W. ¼) of section thirty (30), township twelve (12) north, range two (2) west, less a twenty (20) acre strip, as per recorded instruments, free and clear of all liens and incumbrances.

"The second party hereby agrees to place a certified check for $2,400, as hereinabove referred to, together with instructions in the Liberty National Bank of Oklahoma City, Okla., instructing said bank to deliver said check to the party of the first part upon receipt of an opinion approving the title to said property by his attorneys, Everest, Dudley & Brewer. In this connection it is specifically agreed by the party of the second part that upon the approval of the title, said payment above referred to is to be made regardless of the outcome of the well now being drilled upon said property, and the only reason for this contract is that the title be merchantable before transfer is made.

"It is mutually agreed by and between the parties hereto that Everest, Dudley & Brewer, the attorneys for the party of the second part, is to furnish their opinion upon said title within twelve (12) hours after the abstract is delivered, certified to date by the abstracter, to them.

"This contract shall be binding upon the heirs, devisees, administrators, executors and assigns of the parties hereto.

"Dated at Oklahoma City, Oklahoma, this 23rd day of October, 1929.

"Hulbert S. Clarke,
"Party of the first part,

"G. Cleve Harrell,
"Party of the second part."

The above contract together with the mineral deed from Clarke to Harrell and a certified check of Harrell Brothers for $2,400 were placed in escrow with the Liberty National Bank and were accompanied with the following instruction:

"Liberty National Bank,
"October 23, 1929.
"Oklahoma City, Oklahoma.

"Gentlemen:

"We are enclosing herewith mineral deed executed by Hulbert S. Clarke, together with check for $2,400 of the Harrell Brothers, Oklahoma City.

"This will be your authority, upon advice of J. B. Barnett of the firm of Everest, Dudley & Brewer, to deliver to him the deed, and the check for $2,400 to Mr. Clarke, which is being held by you pending the opinion as to

the validity of the title. Yours very truly, Cleve Harrell, Hulbert S. Clarke."

Plaintiff's petition alleged the execution of the contract, the circumstances surrounding the same, compliance with the terms thereof, and a breach on the part of the defendant Harrell and the escrow holder, Liberty National Bank. Separate answers were filed by the defendants Harrell and Liberty National Bank. Harrell after admitting the execution of the contract, escrow agreement, and attorneys' opinion attached to the plaintiff's petition, denied generally all of the material allegations of the petition and specifically pleaded that time was of the essence of said contract and that the plaintiff had failed to present an abstract showing a merchantable title in accordance with the contract, and that therefore the plaintiff had breached the contract and that the defendant was without liability. The Liberty National Bank averred generally noncompliance with the contract on the part of the plaintiff and admitted the escrow agreement.

The evidence and record discloses substantially the following state of facts: That the plaintiff was the owner of three acres of oil, gas and mineral rights in and under 60 acres of land described in the contract; that there was a well drilling either on or near the premises, and it was expected to prove itself within the very near future; that the contract in question was executed on the 23rd day of October, 1929; that on the night of the same day, or the morning of the day following, the well proved to be a failure, or at least was so considered by the oil fraternity; that the abstract was not delivered to the attorneys for the defendant until the 24th day of October, 1929, and their opinion was written on the 25th day of October, 1929, finding that the title to the oil and mineral right was owned by the plaintiff free and clear except for an $1,800 real estate mortgage, which was a lien on the 60 acres of land and the mineral rights, a release of which the opinion required in order to approve the title; that the parties received notice of the substance of this opinion either on the day it was written or the day following, and that a few days thereafter they were furnished with a written copy of the opinion.

The evidence further shows that the defendant Harrell went to the bank and withdrew the certified check on the 29th day of October, 1929, without notice to the plaintiff and without consulting him. The evidence further shows that Clarke made several attempts to get Harrell and his attorney to waive the requirements relative to the release of the mortgage in question, but without success. As to whether this occurred in the first instance prior to the withdrawal of the certified check by Harrell does not clearly appear. The evidence further shows that Clarke subsequently obtained a release of the mortgage in question and delivered it to Harrell's attorneys about the 20th day of January, 1930, and there is no question about the title being valid at the time of the commencement of this suit. The trial was had to the court and findings of the court and judgment thereon were rendered in favor of the plaintiff. The defendant Harrell alone appeals to this court. The parties will be referred to as they appeared in the trial court.

The defendant makes three assignments of error here and presents them under two propositions as follows:

"Proposition No. 1. Time was of the essence of the contract and plaintiff, under the terms thereof, was not entitled to take two and a half months or any time at all in which to cure his admittedly incumbered and defective title; and the judgment of the trial court decreeing that defendant specifically perform the contract is therefore erroneous and contrary to law and the evidence.

"Proposition No. 2. The trial court erred in admitting parol evidence to vary the terms of the written contract in controversy."

Since the contract was a written one the intention of the parties is to be ascertained from the writing alone, if possible. Lehr v. Melton, 172 Okla. 150, 44 P. (2d) 111; Union Trust Co. v. Shelby Downard Asphalt Co., 55 Okla. 251, 156 P. 903.

As said by this court in Chicago, R. I. & P. Ry. Co. v. Basey, 118 Okla. 87, 246 P. 626:

"The meaning and intention of the parties as expressed by a written contract, are to be gathered from the contract, the nature of the subject-matter contracted about, the situation of the parties, and conduct of the parties in relation to the contract."

Applying this rule to the contract under consideration, we find that it was the intention of the parties to provide for a binding sale of the property in question regardless of the outcome of the well which was being drilled thereon or nearby; that the title conveyed should be clear and free of liens and incumbrances at the time of the transfer; that upon approval of the title by the defendant's attorneys payment of the consideration should be made; that the title to be conveyed was to be merchantable; that an immediate delivery of the conveyance and

'payment of money was not in the contemplation of the parties, but that the contract by its terms and placing the same in escrow anticipated some delay in its completion.

As we have observed, before the abstract could be delivered to the attorneys for the defendant, the well mentioned in the contract had proved to be a disappointment, if not a failure. The attorneys, however, proceeded to examine the abstract, and in their opinion approved the title upon the release of the $1,800 mortgage lien. This requirement when complied with related back to the date of the opinion, since where the only objections to a title are such as may be immediately discharged and do not ordinarily require a re-examination of the title by the attorneys, they are formal in their nature, but they must be made prior to the transfer.

It is urged by the defendant that time was of the essence of the contract in question for the reason that the subject-matter was of a fluctuating nature, rapidly changing in value, and therefore in the contemplation of the parties at the time of the transaction. In some instances this rule is applicable and such contention would be sound. However, it will be observed that the contract here expressly provides that it is to be completed without regard to outcome of the well, and therefore it is apparent that it was the intention of the parties not to take the fluctuating value of the property in consideration, but rather to effect a binding obligation on the part of the plaintiff to convey and of the defendant to accept the property regardless of any future developments. This removes the contract under consideration from the rule contended for by the defendant and relegates it to the general rule. We find that section 9482, O. S. 1931, provides:

"Time is never considered as of the essence of a contract, unless by its terms expressly so provided."

No particular form of words, however, are necessary to show that time is of the essence of a contract, but the intention must clearly appear in the instrument itself. See Cooper v. Ft. Smith & Western Ry. Co., 23 Okla. 139, 99 P. 785, and Standard Lbr. Co. v. Miller & Vidor Lumber Co., 21 Okla. 617, 96 P. 761. This general rule is subject to numerous exceptions in optional contracts. See Mitchell v. Probst, 52 Okla. 10, 152 P. 597, and Crutchfield v. Griffin, 139 Okla. 35, 280 P. 1075.

We find that section 9481, O. S. 1931, in part, provides as follows:

"If no time is specified for the performance of an act required to be performed, a reasonable time is allowed."

In construing the above section of the statute, we have held that where the nature of the subject-matter in the contract fluctuates rapidly up and down so that the mere efflux of time materially affects the value, then time is of the essence of the contract and the performance must be completed at the earliest practicable period. See Nelson v. Hamra, 127 Okla. 141, 259 P. 838; Parker v. Ryan, 143 Okla. 187, 287 P. 1006; Muir v. McCullah, 148 Okla. 52, 297 P. 257. Otherwise, generally speaking, what is a reasonable time is considered to be a question of fact depending upon all of the circumstances surrounding the transaction and is for the determination of the court or jury as the case may be. Under all of the circumstances surrounding the transaction involved herein, we are not prepared to say that the delay on the part of the plaintiff in procuring the release of the mortgage in question was unreasonable. Since actions speak louder than words, from the record before us it appears that the defendant was not interested in the procurement of this release either at the time that he received his attorney's opinion or at any other date. It appears that he went to the bank on the 29th day of October without notice to the plaintiff and drew down his certified check and apparently abandoned the transaction, and in so doing it appears that the mortgage lien existing on the property in question constitutes an excuse and not a reason for the defendant's action. Ordinarily, where time is not of the essence of the contract a reasonable time is provided both by custom and law for the parties to meet any objections, exceptions or defects that may appear in the abstract presented, whether the same be real or fanciful. See Dillon v. Ringleman, 55 Okla. 331, 155 P. 563, and Strain v. Statler, 112 Okla. 233, 240 P. 614. In this latter case we held:

"When time is not of the essence of a contract for the sale and purchase of real estate, and the vendor finds his title defective, he is entitled to a reasonable time and opportunity to obtain a perfect or merchantable title."

Had the defendant demanded an immediate release of the mortgage in question and manifested a desire and intention to carry out and complete his contract, then a different situation would have presented itself to the court and his arguments would have received and merited much more consideration, but since, on the contrary, he manifested a prompt intention to abandon the contract and to

evade any responsibility and liability thereunder, we are convinced that fault was his and not that of the plaintiff.

We have carefully examined the entire record and evidence in this cause, and do not find that the judgment of the trial court is against the clear weight of the evidence, but, on the contrary, is supported thereby. It is the rule in cases of equitable cognizance that this court will weigh the evidence, but the judgment of the trial court will not be disturbed where it is not clearly against the weight thereof. See Melton v. Whitney, 164 Okla. 220, 23 P. (2d) 660, and many former decisions of this court to that effect.

Judgment affirmed.

McNEILL, C. J., and BAYLESS, PHELPS, GIBSON, and CORN, JJ., concur. WELCH, J., dissents.